## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL C. ROMIG, | No. 4:22-CV-01628 |
| Petitioner, | (Chief Judge Brann) |
| v. | |
| KATHY BRITTAIN, | |
| Respondent. | |

## MEMORANDUM OPINION

### NOVEMBER 29, 2023

Petitioner Michael C. Romig filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He seeks to overturn his 2017 state-court convictions and sentence for multiple counts of aggravated assault.  Because Romig cannot satisfy the stringent requirements for federal habeas relief, the Court will deny his Section 2254 petition.

## I.   BACKGROUND AND PROCEDURAL HISTORY

The charges and convictions underlying this habeas action concern a physical altercation that took place in Romig's home in 2016.  On the evening of August 2, after drinking together at a local bar, Romig invited Kelley McTavish, Patricia Koch, and James Barry Moore (McTavish's boyfriend at the time) back to his residence to continue socializing.[1]  According to McTavish, at some point in

---

[1]   *Commonwealth v. Romig*, No. 400 MDA 2018, 2018 WL 6598400, at *1, 2 (Pa. Super. Ct. Dec. 17, 2018) (nonprecedential).

the evening Romig had attempted to show her naked pictures of himself that he had stored on his cellular telephone.[2]  When Moore objected to this behavior, Romig "sucker punched" him in the face and then proceeded to unleash a vicious assault on him.[3]  McTavish and Koch both testified that Romig repeatedly kicked and "stomped" on Moore—who was already unresponsive on the floor and bleeding from his nose, ears, and eyes—striking his head, back, and chest with kicks from steel-toed work boots.[4]  Both women also testified that Romig then held a knife to Moore's throat, threatening to "end it now."[5]  Koch attested that she believed Moore was "already dead" due to the extent of his injuries.[6]

McTavish and Koch eventually convinced Romig to let them drive Moore to Lewistown Hospital.[7]  Moore then had to be life-flighted to another hospital due to the severity of his injuries.[8]  He was critically wounded from the assault, sustaining—among other injuries—paralysis from his chest down, loss of the use of his hands, loss of the ability to ambulate, loss of control of his bladder and bowels, and loss of the use of his sexual organs.[9]  Moore testified that, since the

---

[2]  *Id.*, at *1.
[3]  *Id.*
[4]  *Id.*, at *1-2.
[5]  *Id.*
[6]  *Id.*, at *2.
[7]  *Id.*
[8]  *Commonwealth v. Romig*, No. 1168 MDA 2020, 2021 WL 2624701, at *1 (Pa. Super. Ct. June 25, 2021) (nonprecedential).
[9]  *Romig*, No. 400 MDA 2018, 2018 WL 6598400, at *2.

August 2 assault, he had resided in either hospitals or nursing homes.[10]  According to the police officer who interviewed Romig the morning after the assault, Romig had a laceration to his lip and his hand; no other bruising, swelling, or cuts were noted.[11]

Romig testified at trial in his own defense.[12]  He told a drastically different story about the August 2 events, maintaining that Moore was the aggressor.[13] Romig testified that, at one point before the altercation began, he had asked Moore and the other guests to leave his house, but Moore instead attacked him.[14]  Romig testified that Moore pushed him through a window, struck him with a television remote, and continually "c[a]me back" for more when Romig thought the fight was over.[15]  Romig also claimed that, after Moore lost consciousness, he wanted to call for an ambulance, but McTavish and Koch convinced him to let them take Moore to the hospital in their vehicle.[16]

Romig recounted that, after McTavish and Koch left with Moore, he drank several additional beers and passed out on his sofa "from a combination of alcohol, adrenaline, and blood loss," awakening the next morning to two Pennsylvania State

---

[10]  *Id.*
[11]  *Id.*
[12]  *Id.*
[13]  *Id.*
[14]  *Id.*
[15]  *Id.*
[16]  *Id.*

Troopers at his door.[17]  Romig was arrested and charged with aggravated assault attempting to cause or causing serious bodily injury, 18 PA. CONS. STAT. § 2702(a)(1); aggravated assault attempting to cause serious bodily injury to another with a deadly weapon, 18 PA. CONS. STAT. § 2702(a)(4); and simple assault, 18 PA. CONS. STAT. § 2701(a)(1).[18]

Following a one-day jury trial, Romig was convicted on all three charges.[19] He was ultimately sentenced to 9 ½ to 30 years' imprisonment on the aggravated assault convictions.[20]  Romig appealed, but the Superior Court of Pennsylvania affirmed the judgment of sentence.[21]  In June 2019, the Supreme Court of Pennsylvania denied Romig's petition for allowance of appeal.[22]

Romig then filed a petition under Pennsylvania's Post Conviction Relief Act (PCRA),[23] the state's corollary to federal habeas relief.[24]  The PCRA court denied Romig's petition.[25]  On June 25, 2021, the Superior Court affirmed the PCRA court's denial of Romig's claims of ineffective assistance of trial and appellate

---

[17]  *Id.*, at *2-3.

[18]  *Id.*, at *1; *Romig*, No. 1168 MDA 2020, 2021 WL 2624701, at *2 n.1.

[19]  *Romig*, No. 400 MDA 2018, 2018 WL 6598400, at *3.

[20]  *Id.*  The simple assault conviction was eventually determined to merge with the aggravated assault convictions and the initial concurrent sentence entered for simple assault was vacated. *Id.*

[21]  *Id.*, at *1, 8.

[22]  *Commonwealth v. Romig*, No. 29 MAL 2019, 215 A.3d 561 (Pa. 2019) (table).

[23]  42 PA. CONS. STAT. § 9541 *et seq.*

[24]  *See Romig*, No. 1168 MDA 2020, 2021 WL 2624701, at *1, 2.

[25]  *Id.*, at *2.

counsel.[26]  Once again, the Pennsylvania Supreme Court denied Romig's petition

for allowance of appeal.[27]

Romig filed his Section 2254 petition in this Court in October 2022.[28]  He

then filed a supporting memorandum of law in December 2022.[29]  Respondent

timely responded to Romig's petition and memorandum of law,[30] and Romig filed

a traverse several months later.[31]  Romig's Section 2254 petition, therefore, is ripe

for disposition.

## II.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)[32]

mandates that petitioners demonstrate that they have "exhausted the remedies

available in the courts of the State" before seeking federal habeas relief.[33]  An

exhausted claim is one that has been "fairly presented" to the state courts "by

invoking one complete round of the State's established appellate review process,"

and which has been adjudicated on the merits.[34]

---

[26]  *Id.*, at *1, 5.
[27]  *Commonwealth v. Romig*, No. 100 MAL 2022, 284 A.3d 115 (Pa. 2022) (table).
[28]  Doc. 1.
[29]  Doc. 16.
[30]  Doc. 19.
[31]  Doc. 22.
[32]  28 U.S.C. §§ 2241–2254.
[33]  *Id.* § 2254(b)(1)(A).
[34]  *Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)); *see also Johnson v. Williams*, 568 U.S. 289, 302 (2013).

When a claim is properly exhausted and then raised on federal habeas review, the level of deference afforded to the state court decision is substantial.[35] The AEDPA "does not 'permit federal judges to . . . casually second-guess the decisions of their state-court colleagues or defense attorneys.'"[36]  Accordingly, under Section 2254(d), federal habeas relief is unavailable for exhausted claims unless the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[37]  An unreasonable application of Supreme Court precedent includes situations where "the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case."[38]

This is an intentionally difficult standard to meet.[39]  Section 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" clearly established Supreme Court precedent.[40]  Thus, to obtain federal habeas

---

[35] *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 236 (3d Cir. 2017), *cert. denied sub nom.*, *Gilmore v. Bey*, 138 S. Ct. 740 (2018) (mem.).

[36] *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 543 (3d Cir. 2014) (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013)).

[37] 28 U.S.C. § 2254(d).

[38] *White v. Woodall*, 572 U.S. 415, 425 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 407 (2000)).

[39] *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

[40] *Id.*

relief on an exhausted claim, a state prisoner must demonstrate that the state court's ruling on the claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."[41]

Finally, if a state court has ruled on the merits of a claim, a federal habeas petitioner generally must meet Section 2254(d)'s requirements "on the record that was before that state court."[42] Absent compelling circumstances,[43] district courts cannot supplement the existing state-court record for claims adjudicated on the merits.[44] "Otherwise, federal habeas petitioners would be able to circumvent the finality of state court judgments by establishing a new factual record" on federal habeas review.[45]

## III. DISCUSSION

Romig raises four grounds for relief in his Section 2254 petition, although his first two claims are interrelated. Romig asserts that: (1) the trial court failed to instruct the jury on the "use of Deadly Force / Castle Doctrine"; (2) counsel on direct appeal was ineffective for failing to develop and brief the argument regarding the deadly force castle doctrine jury instruction; (3) trial counsel was

---

[41] *Id.* at 103.
[42] *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011) (footnote omitted).
[43] *See* 28 U.S.C. § 2254(e)(2).
[44] *Brown v. Wenerowicz*, 663 F.3d 619, 629 (3d Cir. 2011).
[45] *Id.*

ineffective for failing to object to the absence of medical expert testimony; and

(4) the prosecution violated *Brady v. Maryland* by failing to provide defense

counsel with the criminal backgrounds of its witnesses.[46]  The Court finds that

none of Romig's claims warrant relief.

### A.      Grounds 1 and 2 – Deadly Force Castle Doctrine Instruction

Romig's first and second grounds for relief involve the trial court's decision

not to provide the "self-defense deadly force castle doctrine" jury instruction.[47]  It

appears that Romig is referring to the Pennsylvania Standard Criminal Jury

Instruction 9.501A "Use of Force/Deadly Force in Self-Defense (Castle

Doctrine),"[48] although he does not expressly provide the source or language of the

at-issue instruction.  However, during the trial charging conference, Romig and his

attorney discussed jury instruction "9.501" and the judge decided to give

instruction 9.501B.[49]  Moreover, from the trial transcript, it is apparent that the trial

court gave instruction 9.501B "Use of Non-Deadly Force in Self-Defense (Castle

Doctrine)."[50]

In Romig's first ground for relief, he asserts that the trial court "abused it[]s

discretion" by not providing the deadly force version of the self-defense castle

---

[46]  Doc. 16 at 5.
[47]  *Id.* at 10.
[48]  *See* PA. SUGGESTED STANDARD CRIM. JURY INSTRUCTIONS 9.501A.
[49]  *See* Doc. 19-2, July 18, 2017 Trial Tr. at 201:1-206:3, 246:12-248:13 [hereinafter "7/18/17 Trial Tr. at __"].
[50]  *See id.* at 246:12-248:13.

doctrine instruction.[51]  Initially, it is doubtful that Romig's "abuse of discretion"

claim is cognizable on federal habeas review.  For such a claim to implicate a

constitutional violation, "the absence of an instruction" must "infect[] the entire

trial with unfairness" such that it constitutes a due process infringement.[52]  Indeed,

"[i]t is the rare case in which an improper instruction will justify reversal of a

criminal conviction when no objection has been made in the trial court."[53]

Furthermore, an "omission . . . is less likely to be prejudicial than a misstatement

of the law."[54]  Romig's claim that the absence of the deadly force self-defense

castle doctrine instruction infected his *entire* trial with unfairness is simply

unpersuasive, especially considering that the trial court gave a non-deadly force

self-defense castle doctrine instruction.

Even assuming this claim implicates the due process clause and is properly

considered on federal habeas review, it is procedurally defaulted.  Although Romig

identified this issue on direct appeal,[55] the Superior Court found that the claim was

waived because it had not been briefed.[56]  Additionally, it was never properly

presented to the trial court inasmuch as, while the instruction was requested, no

---

[51]  Doc. 16 at 10.

[52]  *Albrecht v. Horn*, 485 F.3d 103, 129 (3d Cir. 2007).

[53]  *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).

[54]  *Id.* at 155.

[55]  *See Romig*, No. 400 MDA 2018, 2018 WL 6598400, at *3 (presenting second question for review as "Whether the trial court erred and abused its discretion by refusing to give [Appellant's] requested jury instruction on Justification or self-defense and defense of property (the Castle Doctrine), and on the use of deadly force?").

[56]  *Id.*, at *5 n.2.

specific objection was raised during trial to its absence.[57]  Romig does not establish

cause and prejudice to excuse his default.[58]  Accordingly, this first claim is

procedurally defaulted and unreviewable.[59]

Nevertheless, Romig did raise and exhaust his related Sixth Amendment

claim of ineffective assistance of direct appeal counsel.  Romig argues that,

because he alleged that he had asked Moore to leave his home and then defended

himself from Moore's attack, the castle doctrine applied and the deadly force castle

doctrine instruction should have been given.  He maintains that, because his

counsel on direct appeal failed to properly brief and argue this claim, that

attorney's performance was constitutionally deficient.

A collateral attack based on ineffective assistance of counsel is governed by

the familiar two-pronged test set forth in *Strickland v. Washington*.[60]  To prevail on

---

[57] *See id.*, at *5 (noting that Romig "did not lodge a specific objection or exception to the court's charge, thus waiving any challenge thereto" (citing *Commonwealth v. Baker*, 963 A.2d 495, 506 (Pa. Super. Ct. 2008) ("[U]nder Criminal Procedure Rules 603 and 647(B), the mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points."))); *see also Romig*, No. 1168 MDA 2020, 2021 WL 2624701, at *2 (noting that, although trial counsel "sought to have the charge given . . . , trial counsel failed to specifically object to the trial court's jury charge").

[58] Although Romig faults his attorney on direct appeal for failing to brief the claim, (*see* Doc. 16 at 11; Doc. 22 at 3-4), he does not address the fact that any jury instruction claim was deemed waived for the additional reason that it was never presented to the trial court.  Moreover, while ineffective assistance of counsel can constitute cause to excuse procedural default, *see Coleman*, 501 U.S. at 754, Romig has failed to establish prejudice for the reasons provided below in the discussion of his claim of ineffective assistance of direct appeal counsel.

[59] *See Martinez v. Ryan*, 566 U.S. 1, 9 (2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 747-48 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 84-85 (1977)).

[60] 466 U.S. 668 (1984).

such a claim, a defendant must demonstrate that (1) counsel's representation fell below an objective level of reasonableness based on prevailing professional norms, and (2) the deficient representation was prejudicial.[61]  The defendant bears the burden of proving both prongs.[62]

In determining whether counsel has satisfied the objective standard of reasonableness under the first prong, courts must be highly deferential toward counsel's conduct.[63]  There is a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance.[64]  Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance."[65]

To satisfy the prejudice prong, the defendant must establish a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different.[66]  The district court need not conduct its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing on one.[67]

When a claim of ineffective assistance of counsel has been exhausted in state court, review of that claim by a federal habeas court is significantly

---

[61]  *Strickland*, 466 U.S. at 687-88.
[62]  *See id.* at 687.
[63]  *Id.* at 689.
[64]  *See United States v. Gray*, 878 F.2d 702, 710 (3d Cir. 1989).
[65]  *Id.* at 711 (citing *Strickland*, 466 U.S. at 689-90).
[66]  *Strickland*, 466 U.S. at 694.
[67]  *See id.* at 697; *United States v. Lilly*, 536 F.3d 190, 196 (3d Cir. 2008).

circumscribed.  The federal court does not review the ineffectiveness claim *de novo*; rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable."[68]  Under this "doubly" deferential standard, "so long as fairminded jurists could disagree on the correctness of the state court's decision," a state court's determination that a *Strickland* claim lacks merit precludes federal habeas relief.[69]

On PCRA appeal, the Superior Court analyzed and denied Romig's ineffective assistance claim on the merits.[70]  The Superior Court primarily relied on the statutory language of 18 PA. CONS. STAT. § 505(b)(2.1), which codifies the castle doctrine defense.  The panel reasoned that, because the plain language of the statute indicates that the person against whom deadly force is used must be "in the process of unlawfully and forcefully entering, or has unlawfully and forcefully entered and is present within" the actor's residence, and Moore had been invited into Romig's home as a social guest, the deadly force castle doctrine defense did not apply.[71]  The Superior Court additionally noted that Romig (through PCRA appeal counsel) had "failed to cite any case law for support of his contention that

---

[68] *Harrington*, 562 U.S. at 101 (emphasis added); *Collins*, 742 F.3d at 547-48.
[69] *Harrington*, 562 U.S. at 101, 105 (citation omitted).
[70] *See Romig*, No. 1168 MDA 2020, 2021 WL 2624701, at *2-3.
[71] *See id.*, at *3 (referencing "plain language of subsection (b)(2.1)(i)"); *see also* 18 PA. CONS. STAT. § 505(b)(2.1)(i).

subsection (b)(2.1)(i) can be satisfied if the defendant asked the victim to leave the residence" after initially inviting that person in to socialize.[72]

Romig argues that Pennsylvania case law exists supporting his interpretation of application of the castle doctrine to invitees who are asked to leave a home.  He also maintains that he provided this case law to his attorneys.  He primarily relies on *Commonwealth v. Johnston*, 263 A.2d 376 (Pa. 1970).[73]  The Court notes that *Johnston* does support Romig's contention that the castle doctrine can apply when an invitee, who is asked by the owner of the premises to leave but remains and becomes a trespasser, attacks the owner and the owner defends himself with deadly force.[74]

There are, however, two problems with Romig's argument.  First, to the extent that Romig is claiming that his post-conviction appellate counsel was constitutionally ineffective for failing to cite appropriate case law on PCRA appeal,[75] that claim is a nonstarter.  There is no federal constitutional right to assistance of counsel in post-conviction proceedings, and thus there is no right to effective assistance of post-conviction counsel.[76]

---

[72]  *See Romig*, No. 1168 MDA 2020, 2021 WL 2624701, at *3.

[73]  *See* Doc. 16 at 10; Doc. 22 at 3, 5.  Romig, at times, provides the wrong citation for this case, (*see* Doc. 22 at 3, 5), but it is clear that he is referencing the 1970 Pennsylvania Supreme Court case *Commonwealth v. Johnston*.

[74]  *See Johnston*, 263 A.2d at 379-80.

[75]  *See* Doc. 22 at 5.

[76]  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

Second, and more importantly, Romig has not shown that the Superior Court's denial of this claim was an unreasonable application of *Strickland*. The Superior Court, utilizing the castle doctrine statute and the record and briefing presented by the parties, determined that the castle doctrine was not applicable to the facts of Romig's case (and, presumably, that direct appeal counsel was not ineffective for failing to raise a meritless argument). This was not an *unreasonable* determination in light of the plain language of the statute and the lack of binding case law provided in Romig's briefing. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'"[77]

Assuming, only for argument's sake, that the Superior Court's application of *Strickland* was unreasonable and Romig's direct appeal counsel's performance was indeed deficient, this claim still fails on *de novo* review because Romig cannot establish prejudice. The gravamen of his claim is that the deadly force self-defense castle doctrine instruction (9.501A) should have been given rather than the non-deadly force self-defense castle doctrine instruction (9.501B), and his direct appeal attorney was ineffective for not properly asserting this argument.

---

[77] *Harrington*, 562 U.S. at 101 (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000) (O'Connor, J, concurring)). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (citation omitted).

But Romig is overlooking the fact that, when presented with the conflicting versions of events and Romig's theory of self-defense (and given a self-defense instruction), the jury chose to disbelieve Romig's version and explicitly found that his actions were not justified.  At trial, both McTavish and Koch provided damning eyewitness testimony that Romig viciously and mercilessly assaulted an unconscious and defenseless Moore by repeatedly kicking him in the head, chest, and back with steel-toed boots.  Moreover, while Romig went back to drinking beer on his couch and was observed the next day to have a cut on his lip and hand, Moore had to be life-flighted for emergency medical treatment and was paralyzed from the chest down.

Romig has not explained, much less established, why there would be a reasonable probability that, if provided with the 9.501A instruction, the jury would have decided differently (*i.e.*, the outcome would have been different).  For example, Romig has not provided *any* basis for concluding that the jury's verdict resulted from its determination that he used disproportionate force in self-defense[78] rather than disbelieving his version of events and claim of self-defense entirely, or that there is a reasonable probability that the provision of the 9.501A instruction would have resulted in a different outcome.  Because Romig has not carried his

---

[78] *See* Doc. 16 at 11 (arguing that "if the requested jury instruction would have been given there would have been no limit to the ammount [sic] of force that could be employed in one's home in self-defense").

burden on this *Strickland* claim, even if the claim is stripped of AEDPA deference, no relief is warranted.

### B.    Ground 3 – Ineffective Assistance, Expert Medical Opinion

Romig next contends that his trial counsel was ineffective for failing to object to the absence of expert medical testimony at trial.  This *Strickland* claim was likewise exhausted in state court.[79]  The Superior Court found that nothing in Moore's testimony about his substantial bodily injuries and medical treatment exceeded the scope of permissible lay witness testimony under the state rules of evidence, and thus concluded that trial counsel was not ineffective for failing to object to the absence of expert testimony.[80]

Romig does not engage with the Superior Court's analysis of this claim. The Court finds not only that the state court's determination on this *Strickland* claim was reasonable, but that it was correct.  Moore, who personally experienced the physical repercussions and medical treatment following the August 2, 2016 assault, was permitted to testify about these issues, which were "rationally based on [his] perception," and not on "specialized knowledge" that would require expert testimony.[81]  Moore, for example, would be able to testify that he was hospitalized after the assault and that he was no longer able to use his lower body (including his

---

[79]  *See Romig*, No. 1168 MDA 2020, 2021 WL 2624701, at *3-4.
[80]  *See id.*, at *4 (citing PA. R. EVID. 701).
[81]  *See* PA. R. EVID. 701.

bladder, bowels, and sex organs).  These are not "expert opinions" that would require a Rule 702 medical expert, and the Superior Court was correct in finding that there was no basis to object to this testimony.  Accordingly, the Superior Court's determination on this *Strickland* claim was more than reasonable.

## C.    Ground 4 – Alleged *Brady* Violation

In his final ground for relief, Romig contends that the Commonwealth violated *Brady v. Maryland*[82] by failing to disclose the criminal backgrounds of its witnesses.[83]  The Superior Court addressed this claim on direct appeal.[84]  The court, relying on *Commonwealth v. Tharp*,[85] determined that there was no *Brady* violation by the state for failing to turn over the criminal records of its witnesses (McTavish, Koch, and Moore) because defense counsel had equal access to this information through other publicly available sources.[86]

---

[82]   373 U.S. 83 (1963).  In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Id.* at 87.

[83]   Doc. 16 at 5.  Although Romig includes "medical backgrounds" of the witnesses in his memorandum of law as allegedly suppressed *Brady* material, (*see* Doc. 16 at 14), this issue was not raised in state court and therefore is procedurally defaulted.  In state court, Romig only argued that the Commonwealth failed to disclose its witnesses' criminal backgrounds.  *See Commonwealth v. Romig*, 2018 WL 6529393, Appellant Br. at *8, 33-36 (Pa. Super. Ct. Aug. 12, 2018).

[84]   *See Romig*, No. 400 MDA 2018, 2018 WL 6598400, at *7-8.

[85]   101 A.3d 736 (Pa. 2014).

[86]   *See Romig*, No. 400 MDA 2018, 2018 WL 6598400, at *7-8 ("Accordingly, given *Tharp*'s holding that such records are public and ascertainable by the defense, and [Romig]'s failure to explain why the records he sought were unobtainable with reasonable diligence, we conclude that *Brady* was not violated in this case.").

This decision is contrary to clearly established federal law.[87]  There is no "reasonable diligence" component of a *Brady* claim requiring defense counsel to independently root out material evidence that should have been disclosed by the prosecution.[88]  Rather, impeachment evidence—like a government witness's criminal history—must be disclosed when it satisfies *Brady*'s disclosure requirements (*i.e.*, it is in the government's possession and is material to either guilt or punishment).[89]  Accordingly, because the Superior Court's determination on this claim was contrary to clearly established federal law, the Court must review Romig's *Brady* claim "unencumbered by the deference AEDPA normally requires."[90]

Respondent argues that, because the state court opinion was "silent on the materiality prong of the *Brady* analysis," this Court must analyze the "materiality facet of the claim through the deferential AEDPA lens."[91]  Respondent's advocacy

---

[87] *See* 28 U.S.C. § 2254(d)(1).

[88] *See Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3 263, 290-92 (3d Cir. 2016) (en banc) (explaining that the Supreme Court has concluded that "[a] rule . . . declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process." (alteration in original) (quoting *Banks v. Dretke*, 540 U.S. 668, 696 (2004))); *see also id.* at 293 ("To the extent that we have considered defense counsel's purported obligation to exercise due diligence to excuse the government's non-disclosure of material exculpatory evidence, we reject that concept as an unwarranted dilution of *Brady*'s clear mandate.").

[89] *See, e.g.*, *Wilson v. Beard*, 589 F.3d 651, 663-64 (3d Cir. 2009) ("[I]f the prosecution has the obligation . . . to notify defense counsel that a government witness has a criminal record even when that witness was represented by someone in defense counsel's office, the fact that a criminal record is a public document cannot absolve the prosecutor of her responsibility to provide that record to defense counsel.").

[90] *Panetti v. Quarterman*, 551 U.S. 930, 948, 953 (2007).

[91] Doc. 19 at 30-31.

for AEDPA deferential "gap-filling" is misplaced.  Although the Superior Court failed to discuss materiality, it was not "silent" as to its determination of Romig's *Brady* claim.  It provided multiple pages of analysis, but unfortunately that analysis relied on a "reasonable diligence" standard that is contrary to United States Supreme Court precedent.[92]

Nevertheless, on *de novo* review, the Court finds that the evidence in question was not material.  "Evidence is material [for *Brady* purposes] if there is a reasonable probability that, if the evidence had been disclosed, the result of the proceeding would have been different."[93]  A reasonable probability of a different result is demonstrated when the prosecution's evidentiary suppression "undermines confidence in the outcome of the trial."[94]

Romig claims that "Moore had an escape charge in Dauphin County" and "McTavish had multiple bad check charges."[95]  He also contends that McTavish "received a lenient sentence of six months['] probation for the charges she was on bail for" at the time of the August 2 incident.[96]  He additionally asserts that Koch "had a pending DUI from Montgomery County."[97]

---

[92]   *See Dennis*, 834 F.3d at 356 (Jordan, J., concurring) (explaining that "erroneous" reasoning is different than "opaque" reasoning, and that AEDPA deferential "gap-filling is reserved for only those cases where [the federal court] cannot discern the basis for the state court's conclusions").

[93]   *Wilson*, 589 F.3d at 665 (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)).

[94]   *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

[95]   Doc. 16 at 14.

[96]   *Id.*

[97]   *Id.*

The claims regarding Koch and Moore are plainly meritless.  As to Koch,

Respondent has not uncovered any convictions that could have been disclosed to

defense counsel prior to trial, nor has the Court independently discovered any.

While Romig alleges that Koch had a "pending DUI" in Montgomery County, no

such conviction has been found by Respondent or located in the Unified Judicial

System of Pennsylvania online database.[98]  Romig himself is unsure about the

resolution of this alleged charge.[99]

    As for Moore, Respondent has identified prior convictions in 2001 and 2011

for controlled substance offenses.[100]  Not only are these convictions stale and

irrelevant, but they also would have been inadmissible under Pennsylvania Rule of

Evidence 609 for impeachment purposes.[101]  Although the admissibility of

evidence is not dispositive of its materiality, admissibility remains "a consideration

that bears on *Brady* materiality."[102]  In particular, "inadmissible evidence may be

---

[98]  *See* https://ujsportal.pacourts.us/CaseSearch (last visited Nov. 21, 2023).  Romig provided what he claims is an "internet background check" for Koch.  *See* Doc. 22-11.  That document, however, does not contain full docket numbers or magisterial district numbers such that any search can be performed for the particular DUI offense noted.  The Court additionally observes that such a conviction—even if it existed—is irrelevant and would be inadmissible as impeachment evidence under Pennsylvania Rule of Evidence 609.  *See infra* note 101.

[99]  *See* Doc. 16 at 14.

[100]  *See* Doc. 19-13; Doc. 19-14.  Respondent also notes a 1995 retail theft conviction for Moore, but it is highly unlikely this *22-year-old* conviction would have been admissible under Pennsylvania Rule of Evidence 609(b)'s requirement that its "probative value substantially outweighs its prejudicial effect."  PA. R. EVID. 609(b).  Romig does not address or discuss this conviction or assert that it would have been admissible or led to admissible evidence.

[101]  Pennsylvania Rule of Evidence 609 differs from Federal Rule of Evidence 609 insofar as the only criminal convictions that are admissible for impeachment under Pennsylvania law are *crimen falsi*.  *Compare* PA. R. EVID. 609(a), *with* FED. R. EVID. 609(a).

[102]  *Johnson v. Folino*, 705 F.3d 117, 129-30 (3d Cir. 2013).

material if it could have led to the discovery of admissible evidence."[103]  Romig
has not established, nor can the Court conceive, how these dated and inadmissible
drug offenses could lead to the discovery of admissible evidence or implicate
materiality in any other respect.[104]

Respondent has identified two criminal docket numbers for McTavish: CP-
44-CR-0000644-2013 and CP-44-CR-0000056-2016.  The first conviction (644-
2013) was for use of, or possession with intent to use, drug paraphernalia in
violation of 35 PA. STAT. AND CONS. STAT. § 780-113(a)(32).[105]  McTavish pled
guilty to this misdemeanor offense and was sentenced in December 2014, several
years before the August 2016 incident and July 2017 trial.[106]  This conviction
would be inadmissible for impeachment purposes under state law, and Romig has
not established any other basis for its materiality under *Brady*.

McTavish's second conviction (56-2016) was for recklessly endangering
another person under 18 PA. CONS. STAT. § 2705, a misdemeanor.  This offense
was charged in January 2016 and McTavish was sentenced on August 16, 2016,
after pleading guilty that same day.[107]  McTavish was sentenced to six months'

---

[103] *Id.* at 130 (collecting cases).
[104] Similar to Koch, the "internet background check" documents Romig provided for Moore (Doc. 22-10) do not contain full docket numbers or magisterial district numbers such that any search can be performed for the particular "escape" offense noted.  The Court likewise observes that such a conviction—even if it existed—is irrelevant and would also be inadmissible as impeachment evidence under Pennsylvania Rule of Evidence 609.
[105] *See* Doc. 19-13 at 3.
[106] *See id.* at 6.
[107] *See* Doc. 19-14 at 1, 3.

probation.[108]  Again, Romig has not established why this prior conviction would be

material under *Brady*.  It is not admissible for impeachment purposes under Rule

609(a), nor has Romig claimed that it would lead to the discovery of admissible

evidence.

To the extent that Romig asserts that this conviction and sentence are

somehow evidence that McTavish sought and received leniency in exchange for

testifying against Romig,[109] this completely speculatory claim falls short.

McTavish did not testify until July 2017, almost a year *after* she was sentenced for

the reckless endangerment misdemeanor offense.  This timing does not, on its own,

implicate a *quid pro quo* arrangement evincing leniency in exchange for testimony.

During trial, the court allowed Romig's trial counsel to question McTavish

about being out on bail at the time of the August 2 incident to attempt to show that

McTavish delayed getting Moore to the hospital out of fear for her own legal

predicament (*i.e.*, that McTavish potentially violated her bail terms by drinking

alcohol and smoking marijuana).[110]  There was no questioning with regard to

whether McTavish had received a benefit from the Commonwealth in exchange for

trial testimony.  In fact, the record is devoid of any evidence that McTavish

received leniency in exchange for testifying at Romig's trial.  Romig, therefore,

---

[108]  *Id.* at 3.
[109]  *See* Doc. 16 at 14, 17.
[110]  *See* 7/18/17 Trial Tr. 70:15-74:13.

has failed to carry his burden to show the materiality of the reckless endangerment conviction such that he could establish a due process violation under *Brady*.

Romig lastly asserts that McTavish has "[f]ive counts of bad checks" in 2008, which he claims are *crimen falsi*.[111]  Respondent does not address this assertion and the Court is unable to determine if such convictions exist, as they are unable to be located in the Unified Judicial System of Pennsylvania online database.  The Court finds that, even assuming these temporally distant convictions exist and would have been admissible at trial under Rule 609(a), there is not a reasonable probability that the result of the proceeding would have been different. While it is possible that such convictions could have diminished the credibility of McTavish in the eyes of the jury, they would not have impacted the corroborating testimony of Koch or the vast disparity in the injuries suffered by Romig and Moore.

Romig, therefore, has failed to establish materiality for the alleged *Brady* evidence.  The criminal histories that he claims should have been disclosed do not undermine confidence in the outcome of his trial.  Consequently, his fourth and final ground for habeas relief is meritless.

---

[111]  Doc. 16 at 14; Doc. 22 at 7; Doc. 22-9 at 4-6.

## IV.   CONCLUSION

For the foregoing reasons, the Court will deny Romig's petition for a writ of habeas corpus under 28 U.S.C. § 2254.  The Court will likewise deny a certificate of appealability, as Romig has failed to make a substantial showing of the denial of a constitutional right.[112]  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[112] *See* 28 U.S.C. § 2253(c)(2).